**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------- X
                                                 :

NEW YORK CITY TRANSIT AUTHORITY,

                                                 :

                          Plaintiff,

                                                 :

             - against -                          **COMPLAINT**

                                                 :

WESTFIELD FULTON CENTER LLC,        :

                            Defendant.      :
---------------------------------------------------------------- X

       Plaintiff, New York City Transit Authority, by its attorneys, Ingram Yuzek Gainen Carroll & Bertolotti, LLP, for its complaint against defendant Westfield Fulton Center LLC, alleges as follows:

## OVERVIEW

       1.      This action arises out of a written lease agreement dated as of May 16, 2014 (the "Lease") entered into between the Metropolitan Transportation Authority ("MTA"), as landlord, and Westfield Fulton Center LLC, as tenant ("Westfield" or "Tenant").  The Lease, which has since been assigned to MTA's affiliate, New York City Transit Authority ("NYCTA" or "Landlord"), requires Westfield to make various payments to NYCTA as Rent for Westfield's use and occupancy of portions of the Fulton Center located in downtown Manhattan.

       2.      NYCTA has commenced this action because Westfield has failed, despite due demand, to make all Rent payments required under the Lease.

       3.      All capitalized terms not defined in this complaint have the meaning ascribed to them in Section 1 or elsewhere in the Lease.

## JURISDICTION

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), as a civil action arising under this Court's diversity jurisdiction over matters involving a controversy exceeding the sum or value of in excess of $75,000.00, exclusive of interest and costs.

5.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a) and (b) because Westfield is present in this district, a substantial part of the events or omissions giving rise to the claims occurred in this district, and the subject Lease was executed in this district.

## THE PARTIES

6.      NYCTA is a public benefit corporation organized under the laws of the State of New York with a principal place of business at 2 Broadway, New York, New York 10004.

7.      Upon information and belief, Westfield is a limited liability company organized under the laws of the State of Delaware.

8.      Upon information and belief, based on NYCTA counsel's reasonable inquiry to determine the members of Westfield, the members of Westfield are all citizens of states other than New York.

9.      Upon information and belief, based on NYCTA counsel's reasonable inquiry to determine the members of Westfield, the controlling member of Westfield is Westfield America Limited Partnership ("Westfield America LP"), a Delaware limited partnership.

10.     Upon information and belief, based on NYCTA counsel's reasonable inquiry to determine the partners of Westfield America LP, the parent corporation of Westfield America LP is Westfield America, Inc.

11.     Upon information and belief, Westfield America, Inc. is a corporation organized under the laws of the State of Missouri, with a principal place of business at 2049 Century Park East, 41st Floor, Los Angeles, CA 90067.

## FACTUAL BACKGROUND

12.     On or about May 16, 2014, Westfield entered into the Lease with MTA during the redevelopment of Fulton Center located in lower Manhattan.  The leased premises encompasses portions of the interior spaces as well as exterior and structural elements of the Fulton Center, consisting of: (a) the Fulton Building, located at the intersection of Broadway and Fulton Street; (b) the Corbin Building, located at the intersection of Broadway and John Street; (c) the Dey Street Headhouse, located at the intersection of Broadway and Dey Street; (d) the Dey Street Concourse, comprising subsurface improvements located under Dey Street between Broadway and Church Street; (e) the R Line Underpass, comprising subsurface improvements located under Church Street at the western end of the Dey Street Concourse; and (f) the 4/5 Line Underpass, comprising subsurface improvements located under Broadway at the eastern end of the Dey Street concourse (collectively, the Premises).  Excerpts of the Lease, without its exhibits, are annexed to this complaint as **Exhibit A**.

13.     At the time that the Lease was entered into, MTA was the fee owner of the Premises.  Portions of Fulton Center that were not owned by MTA are not a part of the leased Premises.

14.     Under a deed dated on or about June 17, 2015, MTA transferred its interest in the Premises to NYCTA.  As a result, NYCTA acquired the interests of MTA as the Landlord under the Lease.

I.      **The Lease's Rent Provisions**

15.     The Lease requires Westfield to manage and operate the Fulton Center and oversee certain revenue-raising activities on Landlord's behalf, including entering into Subleases with qualified Subtenants in areas of the Premises intended for commercial use (the Commercial Usage Areas).  Section 4 of the Lease requires a portion of these revenues to be remitted to the Landlord as Participation Rent.

16.     Section 4.9 of the Lease also requires payment by Tenant of "certain other charges" as Additional Rent.

17.     The term "Rent" as defined in the Lease includes items defined as Participation Rent and Additional Rent.

18.     Section 4 of the Lease sets forth the Tenant's Participation Rent obligations. Section 4 provides for three types of Participation Rent: (a) Signage Participation Rent arising from Signage Revenues; (b) Sponsorship Participation Rent arising from Sponsorship Revenues; and (c) Commercial Participation Rent arising from Commercial Revenues.

A.      **Signage Participation Rent**

19.     The Premises includes multimedia signage where commercial advertising material is displayed for a fee.  Signage is controlled either by the Landlord (Landlord Controlled Signage) or the Tenant (Tenant Controlled Signage).  All Tenant Controlled Signage, which consists of (a) Base Tenant Controlled Signage, and (b) Additional Tenant Controlled Signage, is under the control of Westfield and is to be operated for profit by Westfield.

20.     With respect to Signage Revenues derived from Base Tenant Controlled Signage, Section 4.1.1 of the Lease provides that Westfield must receive (a) an amount equal to its Unrecovered Signage Capital Expenditures, and (b) a 10% per annum return, compounded

annually, on the balance from time to time of the Unrecovered Signage Capital Expenditures. Section 4.1.1 also provides that NYCTA must receive 70% of the balance of the Signage Revenues derived from Base Tenant Controlled Signage remaining after the amounts specified in (a) and (b) are paid to Westfield (the Base Signage Participation Rent).

21.     With respect to Signage Revenues derived from Additional Tenant Controlled Signage, Section 4.1.2 of the Lease provides that Westfield must receive (a) an amount equal to its Unrecovered Signage Capital Expenditures after taking into account any recovery had for its Base Tenant Controlled Signage, and (b) a 10% per annum return, compounded annually, on the balance from time to time of the Unrecovered Signage Capital Expenditures, after taking into account any recovery had for its Base Tenant Controlled Signage.  Section 4.1.2 also provides that NYCTA must receive 65% of the balance of the Signage Revenues derived from the Additional Tenant Controlled Signage remaining after the amounts specified in (a) and (b) are paid to Westfield (the Additional Signage Participation Rent).

22.     Signage Participation Rent includes Additional Signage Participation Rent and Base Signage Participation Rent.

23.     As relevant herein, Section 4.7(a) of the Lease provides that Westfield shall treat rents and revenues owed for Tenant Controlled Signage "as having been paid during the month in which such rents and revenues are due and payable, even if such rents and revenues are not so paid."

**B.     Sponsorship Participation Rent**

24.     Section 4.3 of the Lease requires Westfield to pay the Landlord certain Sponsorship Revenues raised from sponsorship events.  Specifically, Section 4.3 obligates

Westfield to pay 50% of the Sponsorship Net Revenues to Landlord as Sponsorship Participation Rent.

25.     As relevant herein, Section 4.7(a) of the Lease provides that Westfield shall treat rents and revenues owed for Sponsorship Events "as having been paid during the month in which such rents and revenues are due and payable, even if such rents and revenues are not so paid."

**C.     Commercial Participation Rent**

26.     Section 4.2 of the Lease requires Westfield to pay Commercial Revenues derived from the Commercial Usage Areas of the Premises, including fixed rent, percentage rent, and key money paid by a Subtenant.

27.     Additionally, if Westfield's Commercial Net Revenues exceed $3.5 million in a Lease Year (the 1st Level Initial Threshold), then Section 4.2.1 of the Lease requires that on or before January 31 following the end of such Lease Year, Westfield must pay the Landlord 50% of the excess of the 1st Level Initial Threshold as 1st Level Participation Rent, subject to a cap of $625,000.00 (the 1st Level Participation Rent Cap).  Both the 1st Level Initial Threshold and the 1st Level Participation Rent Cap are subject to Annual Escalation.

28.     In addition to paying the 1st Level Participation Rent, if Westfield's Commercial Net Revenues exceed $4.75 million in a Lease Year (the 2nd Level Initial Threshold), then Section 4.2.2 of the Lease requires that on or before January 31 following the end of such Lease Year, Westfield must pay the Landlord 60% of the excess of the 2nd Level Initial Threshold as 2nd Level Participation Rent.  The 2nd Level Initial Threshold is subject to Annual Escalation.

29.     Payment of all Participation Rent is subject to Westfield's right to take a limited, specified Available Rent Offset as described under Section 4.5 of the Lease each month in an amount not to exceed the Rent for such month, with any excess Available Rent Offset carried

over in the following month as a credit against Rent except a Guaranteed Minimum Rent Payment.

30.     Pursuant to Section 4.6 of the Lease, no "deduction, credit or set-off, except as specifically provided in this Lease" may be taken by Westfield against the Rent payable to the Landlord.

     **D.**    **Westfield's Financial Statements and**
          **NYCTA's Reconciliation and Audit Rights**

31.     Section 4.7(a) of the Lease requires Westfield to deliver, no later than the 30th day of each month, a "true, correct and complete" Monthly Statement reporting all Signage, Sponsorship, and Commercial Revenues earned for the immediately preceding calendar year and the entire lapsed portion of the Lease Year, including the immediately preceding month, using an accrual basis of accounting in accordance with GAAP.  The Monthly Statement must contain, among other information, itemized entries of the revenues earned in each category of Participation Rent for the immediately preceding calendar month and the entire elapsed portion of the Lease Year, as well as Westfield's expenses, expenditures, and Available Rent Offset that Westfield claims may apply under the Lease.

32.     Section 4.7(b) of the Lease also requires Westfield to deliver to the Landlord a certified Annual Statement no later than 120 days after the close of each Lease Year, containing information similar to that described in the preceding paragraph for the entire preceding Lease Year.

33.     Section 4.7(c) of the Lease also provides NYCTA the right to reconcile the Rent amount and demand payment for any deficiency with Default Interest, which is defined under the Lease as an annual rate equal to the lesser of (a) the Prime Rate plus 4% per annum; or (b) the Usury Limit.

34.     Section 4.7.3 of the Lease provides NYCTA the right, for a period of three years after Westfield's submission of the Annual Statement, to examine or conduct "a complete audit" of any Monthly or Annual Statement, and any books and records (Performance Records) which Westfield must maintain for the purpose of such an examination or an audit.

35.     Section 4.7.4 of the Lease requires Westfield to pay any additional Rent due as determined pursuant to any examination or audit within 30 days following demand from the Landlord, and if any such examination or audit discloses that the actual amount of Rent differs by more than 5%, Westfield must pay the reasonable costs of such examination or audit as Additional Rent to Landlord within 30 days following rendition of a bill therefor.

**E.     Additional Rent (utility charges)**

36.     As noted above, in addition to the Participation Rent obligations, Section 4.9 of the Lease requires Westfield to pay the Landlord "certain other charges as . . . elsewhere provided" in the Lease (the Additional Rent).  Section 4.9 of the Lease requires Westfield to pay Additional Rent within 30 days after Westfield's receipt of an invoice and reasonable supporting documentation.

37.     Section 7.3 of the Lease provides that "Tenant shall pay (or cause Subtenants to pay) all charges for such utilities serving the Commercial Usage Areas, in accordance with Exhibit R."  Exhibit R to the Lease sets forth the allocation of various utility charges between Westfield and NYCTA.

38.     With respect to non-HVAC-related electricity consumption in the Commercial Usage Areas, Exhibit R provides that Westfield must pay NYCTA, on a monthly basis upon demand, the electrical demand and consumption measured by sub-meters as Additional Rent.

39.     With respect to HVAC-related electrical consumption in the Commercial Usage Areas, Exhibit R provides that Westfield must pay NYCTA, on a monthly basis upon demand, its allocable share of the electrical demand and consumption measured at service switches SS1 and SS2 and switchboard DB-C, as Additional Rent.

40.     With respect to steam consumption in the Commercial Usage Areas, Exhibit R provides that Westfield must reimburse NYCTA for 26.6% of the steam consumed by the Central HVAC Plant attributable to the Commercial Usage Areas.

41.     NYCTA made demands upon Westfield for the payment or reimbursement of Westfield's share of the utility charges attributable to the Commercial Usage Areas.  Westfield did not object to the demands or dispute the calculation or determination of these utility charges.

**F.     Additional Rent (design review charges)**

42.     Section 8 of the Lease provides that Westfield will have the right to engage in Construction, or cause its Subtenants to engage in Construction of the Premises, subject to compliance with certain requirements.  Westfield must submit Plans and Specifications for such work to the Landlord for approval in accordance with the Design Guidelines attached as Exhibit L to the Lease.

43.     Section 8.2(d) of the Lease sets forth the fees NYCTA will charge Westfield to review and approve the Plans and Specifications in connection with any Improvements to be made in the Subtenant space for purposes of design review (the Design Review Process) and for review for compliance with any codes (the Code Compliance Review Process).

44.     NYCTA made demands upon Westfield for the payment of its Section 8.2(d) charges in connection with its review and approval of the Plans and Specifications under the

Design Review Process and Code Compliance Review Process. Westfield did not object to the demands or dispute the calculation or determination of these Section 8.2(d) charges.

45.     Section 4.9 of the Lease requires Westfield to pay the fees due under Section 8.2(d) within 30 days after receipt of an invoice and reasonable supporting documentation from NYCTA.

## II.     Westfield's Monetary Default Under the Lease

46.     As of June 25, 2018, Westfield had failed to make any payment towards its Participation Rent since late 2017, and had failed to fully satisfy its Additional Rent obligations except for some payments of utility charges.

47.     Section 22.1.1 of the Lease defines an "Event of Default" as one where "a Monetary Default occurs and continues for 10 Business Days after notice from Landlord, specifying in reasonable detail the amount of money not paid and the nature and calculation of each such payment."

48.     Section 22.3 of the Lease requires Westfield to pay Default Interest if Westfield fails to make any payment to Landlord required under the Lease within 10 Business Days after such payment is due and payable, beginning on the date such payment was first due and payable and continuing until the date when Westfield actually makes such payment.

49.     On or about June 25, 2018, NYCTA sent Westfield a notice of default specifying in reasonable detail the unpaid utility charges, Signage Participation Rent, and Sponsorship Participation Rent that were then due and owing in the amount of $3,315,337.49, with a spreadsheet describing the amounts due for each of these items. Westfield did not object to the demands or dispute the calculation or determination of these amounts, but Westfield did not make payment of the Rent amount demanded.

50.     On October 12, 2018, NYCTA sent Westfield a letter pursuant to Section 8.2(d) of the Lease demanding payment for NYCTA's fees for the Design and Review Process and Code Compliance Review Process with respect to certain Subtenant Improvements, for $12,000.00.  Westfield did not object to the demands or dispute the calculation or determination of these Section 8.2(d) charges.

51.     On October 31, 2018, NYCTA sent Westfield a notice of monetary default ("Notice of Monetary Default") pursuant to Section 22.1.1 of the Lease specifying in reasonable detail the amount of sums then due and owing for unpaid utility charges, Signage Participation Rent, Sponsorship Participation Rent, and Section 8.2(d) charges, and NYCTA demanded payment of $4,195,393.00, together with Default Interest.  Annexed to this complaint as **Exhibit B** is a copy of the October 31, 2018 Notice of Monetary Default with its exhibit, which is a spreadsheet describing the amounts due for each of these items.

52.     The Notice of Monetary Default specified the following amounts due for utility charges:

| | |
|---|---|
| Total non-HVAC-related electricity charges due: | $105,121.00 |
| Total HVAC-related charges due: | $ 93,797.00 |
| Total steam charges due: | $ 29,428.00 |
| Total utility charges due: | $228,346.00 |

53.     The Notice of Monetary Default specified the following amounts due for Signage Participation Rent:

| | |
|---|---|
| Total Base Signage Participation Rent due: | $1,706,347.00 |
| Total Additional Signage Participation Rent due: | $2,224,486.00 |

54.     The Notice of Monetary Default specified the following amount due Sponsorship Participation Rent:

| | |
|---|---|
| Total Sponsorship Participation Rent due: | $24,214.00 |

55.     The Notice of Monetary Default specified the following amount due for a Section

8.2(d) fee for the Design Review Process and the Code Compliance Review Process:

Total Section 8.2(d) fees due:                    $12,000.00

56.     In sum, the total amount of Rent then due and owing to NYCTA at the time of the

Notice of Monetary Default was $4,195,393.00, calculated as follows:

| | |
|---|---|
| Utility charges | $  228,346.00 |
| Base Signage Participation Rent | $1,706,347.00 |
| Additional Signage Participation Rent | $2,224,486.00 |
| Sponsorship Participation Rent | $   24,214.00 |
| Section 8.2(d) fees | $   12,000.00 |
| Total Rent due: | $4,195,393.00 |

57.     The amounts due for Base Participation Rent, Additional Signage Participation

Rent, and Sponsorship Participation Rent set forth in the Notice of Monetary Default are based

on amounts obtained from the examination of Westfield's Monthly MTA Fee Statements for

December 2017 and August 2018, copies of which are annexed as **Exhibit C** to this complaint.

The calculation and determination of those components of Rent therefore are not subject to

dispute.

58.     Westfield responded to the Notice of Monetary Default in a letter dated

November 14, 2018, a copy of which is annexed as **Exhibit D**.  At that time Westfield informed

NYCTA that Westfield was remitting $3,528,022.00 of the amount demanded by NYCTA for

utility payments, Base Signage Participation Rent, Additional Signage Participation Rent,

Sponsorship Participation Rent, and design review and approval fees, in amounts shown on

Exhibit A to Westfield's November 14, 2018 letter.

59.     As shown on Exhibit A to Westfield's November 14, 2018 letter, Westfield failed

to remit a total of $667,371.00 of Rent payments related to "Media Income" (i.e., Base Signage

Participation Rent and Additional Signage Participation Rent) and Sponsorship Participation Rent.

60.     Since NYCTA's receipt of Westfield's letter dated November 14, 2018, NYCTA has made repeated demands upon Westfield to provide a breakdown and calculation that supports Westfield's failure to pay $667,371.00 of Rent payments that were demanded in the Notice of Monetary Default but have not been paid by Westfield.  Westfield has responded to NYCTA's demands for such information by referring NYCTA to Westfield's Annual Statement of Participation Rent for the year ended December 31, 2017, but without providing calculations or other support for Westfield's failure to pay the $667,371.00 of Rent payments due based on the amounts set forth in Westfield's Monthly MTA Fee Statements for December 2017 and August 2018 (Exhibit C hereto).  NYCTA therefore rejects Westfield's unsupported contention that Westfield does not owe NYCTA $667,371.00 of the Rent amount demanded in the Notice of Monetary Default.

61.     The amounts demanded in the Notice of Monetary Default are without prejudice to NYCTA's rights (a) to demand additional Rent now due after performing an audit of the Monthly and Annual Statements and Performance Records of Westfield under Section 4.7.3 of the Lease; and (b) to demand additional amounts of Rent that become due after the Notice of Monetary Default.

### COUNT ONE

### Breach of Contract

62.     NYCTA repeats and realleges the preceding paragraphs of this complaint.

63.     The Lease is a valid and binding agreement between NYCTA and Westfield.

64.     By failing to pay all Rent due and owing under the Lease, Westfield breached the provisions of the Lease.

65.     NYCTA performed all of its obligations under the Lease, including by providing written Notice of Monetary Default to Westfield and giving Westfield 10 Business Days to cure the default.

66.     Section 4.6 of the Lease requires Westfield to "pay Landlord the Rent without notice or demand, deduction, credit or set-off, except as specifically provided in this Lease . . . ." Accordingly, Westfield may not take any deduction, credit, set-off or offset against any Rent due and owing under the Lease based on any alleged breach by NYCTA.

67.     Westfield has failed and refused to pay $667,371.00 of Rent due and owing and, therefore, has defaulted under the terms of the Lease.

68.     As a result of Westfield's breach of contract, NYCTA has suffered damages in the amount of $667,371.00, and is entitled to Default Interest on all sums due that are subject to Default Interest.

## COUNT TWO

### Attorneys' Fees

69.     NYCTA repeats and realleges the preceding paragraphs of this complaint.

70.     Section 28.1 of the Lease provides that, in the event of any litigation arising under the Lease, the prevailing party is entitled to "reimbursement of its Legal Costs with Default Interest and all other reasonable costs and expenses incurred in enforcing this Lease or curing the other Party's default." The Lease defines Legal Costs to include reasonable attorneys' fees and court costs.

71.     In accordance with Section 28.1 of the Lease, if NYCTA prevails in any litigation or dispute with Westfield, Westfield is obligated to pay NYCTA's expenses, including reasonable attorneys' fees, incurred in connection with the enforcement of NYCTA's rights under the Lease upon Westfield's default.

72.     As a result, Westfield is liable to NYCTA for the expenses and attorneys' fees incurred by NYCTA in prosecuting this action, in an amount to be determined upon the trial of this action.

**WHEREFORE**, NYCTA demands the following relief against Westfield as follows:

(a)     On the first claim, in the sum of $667,371.00;

(b)     On the second claim, in an amount to be determined at trial;

(c)     For pre-judgment interest at the Default Interest rate on all amounts due;

(d)     For post-judgment interest on the judgment amount;

(e)     The costs and disbursements of the action; and

(f)     For such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        December 18, 2018

                    INGRAM YUZEK GAINEN CARROLL
                        & BERTOLOTTI, LLP
                    *Attorneys for Plaintiff*
                    *New York City Transit Authority*


                    By:     /s/John G. Nicolich
                            John G. Nicolich
                            Daniel L. Carroll
                            Mioko C. Tajika
                    250 Park Avenue, 6th Floor
                    New York, NY  10177
                    Tel: (212) 907-9600